FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA** 2016 JUN 29  AM 9: 54
**ORLANDO DIVISION**

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA  JLC

DAVID CROSS, an
Individual, on behalf of himself
and all others similarly situated,

    *Plaintiff,*

v.

POINT & PAY, LLC, a
Delaware Corporation,

    *Defendant.*

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 6:16-CV-1182-ORL-41/KRS

CLASS ACTION

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

1. Plaintiff, DAVID CROSS, bring this action individually and on behalf of a class of similarly situated consumers against Defendant, POINT & PAY, LLC ("Defendant" or "Point and Pay"), to recover all monies unlawfully and deceptively procured by Point and Pay in charging illegally excessive fees for online bill payment processing services to consumers, as part of a scheme involving false advertising while acting as an unlicensed money transmitter.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds



$5,000,000, exclusive of costs and interests, and (iii) none of the exceptions under that section applies to this action.

3.  According to its website, Defendant offers bill pay services to "more than 1,500 clients from coast to coast," including governments, utilities, courts, and more, "processing payments for everything from water bills to insurance premiums."[1]

4.  In particular, Defendant offers online payment options.

5.  It is widely estimated that over 10% of bill payers in the U.S. make payments online using a credit or debit card.[2]

6.  According to the U.S. Census Bureau, the estimated number of housing units in the City of St. Cloud, Florida was 14,544 in 2010.[3]

7.  Given (i) 1500 of Defendant's clients, (ii) thousands of housing units per client, as shown by the census data of St. Cloud above, and (iii) 10% of the units using the online payment option monthly for the 5 year limitations period, the amount in controversy in this case clearly exceeds $5,000,000, exclusive of costs and interest, as required by CAFA, 28 U.S.C. § 1332(d).

8.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here, and under 18 U.S.C. § 1965(a) because Defendant transacts business or is otherwise found in this district.

---

[1] http://www.pointandpay.com/about-us/about-the-company [Last Accessed June 8, 2016]
[2] Kathy Plymouth and Jody Martin, First Data Corporation, Bill Payment Trends: Major Shifts in Consumer Behavior Require Comprehensive Planning *accessed via* https://www.firstdata.com/downloads/thought-leadership/fd_billpaymenttrends_whitepaper.pdf (2009).[Accessed June 8, 2016].
[3] http://www.census.gov/quickfacts/table/PST045215/1214125,1262625 [Last Accessed June 8, 2016].

## PARTIES

9.  Plaintiff, DAVID CROSS, is a natural person, and currently is, and was at all times relevant to the events giving rise to the claims, a citizen of the State of Florida, residing in the City of St. Cloud, Osceola County, Florida.

10. Defendant is a funds transmission service and bill payment processing company incorporated in the State of Delaware, and principally located in Troy, Michigan.

## GENERAL ALLEGATIONS

11. Defendant is a funds transmission service and bill payment processing company with over 1,500 municipal and industrial clients across the country.[4]

12. At all material times, the City of St. Cloud, Florida was a bill payment processing client of Defendant, along with multiple other municipalities.

13. Defendant contracts with clients as a third-party vendor for online payment processing to process and accept check, debit and credit card payments made by consumers, such as Plaintiff, for sums owed to Point and Pay's clients.

14. Defendant provides online bill payment processing services for companies in numerous industries and governmental entities throughout Florida and the United States, including, but not limited to, within the municipality of St. Cloud, Florida.

15. Defendant's clients include governmental entities, courts, utilities, higher education organizations, healthcare companies, insurance companies, and rental properties.

---

[4] Point & Pay, LLC, "About the Company", http://www.pointandpay.com/about-us/about-the-company

16. Defendant contracts with its governmental or commercial clients to provide the clients' consumers with online bill pay services in exchange for a surcharge in the form of fees referred to as convenience fees or absorbed rates ("processing fees").

17. The processing fee is a specific surcharge that Defendant imposes upon the consumer for making online payments via credit or debit card.

18. Defendant processes the bill payment and transmits the money it obtains back to its clients, while retaining the processing fee paid by the consumer.

19. Defendant advertises the use of its online payment services to consumers via Defendant's clients entities.

20. When individual consumers use Defendant's online payment services, they agree to pay the processing fee in exchange for paying their bills using their credit or debit card.

21. The sales practices and services of Defendant, individually and by and through its clients, misrepresent, conceal and misstate processing fees to individual consumers because Defendant charges consumers like Plaintiff more than the advertised fees for making a payment using a debit or credit card.

22. Point & Pay builds custom payment websites for its clients, including municipalities, that are "configured to collect all necessary customer information and designed to match clients' websites, in just a few days."[5]

---

[5] http://www.pointandpay.com/products [Accessed June 8, 2016].

23. Defendant provides its clients with customized, non-generic website pages, website copy and images and other media to include in the information conveyed to consumers to facilitate payment processing.

24. Specifically, the online payment services provided to its clients by Defendant include:

   a.   Online steps between arrival and payment;

   b.   Payment options for credit, debit, or check;

   c.   Shopping cart interface for multiple items and products;

   d.   Fully configurable fields to collect necessary data;

   e.   Custom header images, background images and colors;

   f.   Text edits to provide targeted customer instructions;

   g.   Other integration related communications.

25. Defendant provides its clients with information about its services and processing fees with the knowledge and intent that said information will be publicly advertised to individual consumers, such as Plaintiff, who may or will make bill payments using Defendant's online payment services.

26. Defendant's representations about its services and processing fees are conveyed to consumers with the intent to procure processing fees.

27. The representations, including website copy, images and other information provided by Defendant to its clients regarding its services and fees, contain false, misleading, deceptive and unfair statements and omissions regarding the processing fees charged to consumers by Defendant for its online payment processing services.

28. In advertising such fees to consumers, Defendant's client entities are acting as agents and/or are apparent agents of Defendant in soliciting individual consumers to use the services of Defendant to process online payments.

29. Defendant is vicariously liable for the conduct of its clients in advertising its services and charges.

30. First, Defendant's clients have actual or apparent authority to advertise Defendant's services and fees.

31. Defendant's clients have actual authority to advertise Defendant's services and fees through their contracts and agreements with Defendant.

32. Defendant's actions have also created apparent authority in its clients to advertise its services and fees and to initiate contracts between Defendant and consumers for credit card processing services by acts including:

    a. Allowing its clients to hold themselves out as having authority to offer the credit card payment services to individual consumers;

    b. Providing its clients with indications of authority that lead a reasonably prudent consumer to rely on the apparent authority of Defendant's clients to advertise the fees and pricing for the credit card processing;

    c. Taking actions that lead to apparent authority, including:

        i. supplying the sales tools and sales information, contracts for processing services, website systems;

        ii. including terms and conditions and other information about processing fee rates that are publicly disclosed to consumers.

33. The actions of Defendant's clients in advertising Defendant's services and charges are within the actual or apparent authority of the clients and are binding on the agent's principal--Defendant, regardless of whether the principal had knowledge of the agent's actions.

34. Additionally, Defendant is vicariously liable for the acts of its clients in promoting its services and charges even if unauthorized when performed because Defendant knew or should have known its clients were advertising fees lower than those charged to the consumer, and Defendant ratified the same through course of dealing over many years with its clients.

35. The false, misleading, deceptive and unfair statements and omissions regarding the processing fees charged by Defendant for its online payment processing services were made with Defendant's knowledge and/or intent that they would result in additional consumers using Defendant's services and paying the processing fees.

36. The excessive charges beyond the advertised and expected processing fees were not voluntary payments because Plaintiff and reasonable, similarly-situated consumers had insufficient notice that the actual charges exceeded those communicated by Defendant individually and by and through its clients.

37. The fact that Plaintiff made the payment has no bearing on whether Defendant was entitled to the payment. "When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was

excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment." Fla. Stat. § 724.05.

38. Defendant unfairly and deceptively charges consumers like Plaintiff more than the advertised and/or communicated fees for making a payment using a debit or credit card.

39. Plaintiff brings this action to recover damages sustained as a result of the false, misleading, unfair and deceptive advertising and charging of processing fees that Defendant imposes on consumers for its online payment processing services.

40. Plaintiff brings this action to enjoin Defendant from further unfair and deceptive online payment processing practices and processing fees.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF DAVID CROSS

41. Plaintiff, David Cross, lives in a residence in St. Cloud, Osceola County, Florida, with utility services supplied by St. Cloud Utilities.

42. Mr. Cross lived at this residence beginning in 2015, and continues to live in St. Cloud today.

43. Mr. Cross made bill payments for utility services online via debit or credit card.

44. The bill payments were processed by Defendant as a third-party vendor of the City of St. Cloud for online payment processing.

45. Defendant imposed a processing fee on Plaintiff for making the online payments via credit or debit card.

46. The City of St. Cloud advertised the processing fee to Plaintiff, and other consumers, as $1.50 per $50.00 (highlights added):

8

## *Payment Options*

| Payment Option | City of St. Cloud - St. Cloud Utilities |
|---|---|
| Mail | City of St. Cloud<br>St. Cloud Utilities<br>PO Box 31304,<br>Tampa, FL 33631-3304 |
| Drop Box payments (no cash) | • 24-hour drop box located on the west-end of City Hall. Payments are sent to the payment processing center in Tampa and are not processed on the same day.<br>• Drop box located in the main lobby of City Hall Building A. St. Cloud Utilities payments made in this drop box by 2:00 will be processed the same day. |
| eCheck | Please call 407-957-7344 (option 2) or visit myutilities.stcloud.org or www.stcloud.org/utilities to pay your bill with our electronic check service through Point and Pay, an independent service provider. Your one-time payment will be deducted from your checking account. Point and Pay charges a convenience fee of $1.50 per $50.00 for all electronic check payments made by phone. |
| Credit Card | Point and Pay, an independent service provider, processes all credit card payments made to City of St. Cloud. Call 407-957-7344 or visit myutilities.stcloud.org or www.stcloud.org/utilities to pay your bill using Point and Pay. Payments may be made using your American Express, Visa, Mastercard or Discover Card. Point and Pay charges a convenience fee of $1.50 per $50.00. |

http://www.stcloud.org/DocumentCenter/View/14183 [Accessed June 8, 2016].

47. The City of St. Cloud website also provided the following information regarding the

charges for the processing fees:

*Note - the 3rd party payment vendor charges a convenience fee of $1.50 per $50.00 for Credit/Debit payments.

http://myutilities.stcloud.org/OnlinePayment.aspx [Accessed June 8, 2016].

9

48. Plaintiff's payment page shows Defendant charged him more than an amount "equal



to $1.50 per $50":

49. Defendant advertised a processing fee of "$1.50 per $50.00."

50. Defendant charged Plaintiff $6.00 instead of $4.50, which is "equal to $1.50 per $50"

for a bill of $189.77, resulting in an overcharge of $1.50.

51. Alternatively, Defendant charged Plaintiff $6.00 instead of a prorated charge for the

portion of the bill between $150.00 and $189.77, or $5.69, resulting in an overcharge

of $.31.

52. The offer to allow payment using a credit card or debit card in exchange for an

amount "equal to $1.50 per $50" is a contractual offer from Defendant to Plaintiff.

53. Plaintiff accepted the offer and paid for his bills via credit or debit card.

54. Defendant breached its contract with Plaintiff by charging more than an amount

"equal to $1.50 per $50."

## CLASS ALLEGATIONS

55. This action is brought on behalf of a class and subclasses defined as follows:

**Class**

> (i) All persons (ii) who paid money to Point & Pay, LLC via debit or credit card (iii) where Point & Pay, LLC provided bill pay services, (iv) where Point & Pay, LLC imposed a fee for such service (v) and where such fee actually charged was at a greater rate than the advertised or stated rate offered (vi) during the five year period prior to the filing of the complaint in this action through the date of certification.

**Florida Subclass**

> (i) All persons who reside in Florida (ii) who paid money to Point & Pay, LLC via debit or credit card (iii) where Point & Pay, LLC provided bill pay services, (iv) where Point & Pay, LLC imposed a fee for such service (v) and where such fee actually charged was at a greater rate than the advertised or stated rate offered (vi) during the five year period prior to the filing of the complaint in this action through the date of certification.

**Injunctive and Declaratory Relief Subclass**

> (i) All consumers presently residing in areas subject to bill payment processing (ii) serviced by Point & Pay, LLC (iii) using a debit or credit card (iv) through Point & Pay, LLC's bill payment service (v) and who are subject to future improper surcharges for such payment (vi) at the date of certification.

56. Plaintiff alleges on information and belief that the Class and Subclasses are so numerous that joinder of all members is impractical.

57. There are questions of law or fact common to the Class and Subclasses, and common issues predominate over any issues involving only individual Members.

The common factual and/or legal issues common to each Member of the Class and/or Subclass are as follows:

a.   Whether Defendants breached contracts with consumers by charging payment processing fees that are greater than the fees advertised to consumers for debit or credit card transactions.

b.   Whether Defendant breached contracts with consumers by charging payment processing fees that are greater than the fees Defendant provided to its clients as the fees to be communicated to consumers.

c.   Whether information related to Defendant's online payment services provided to its clients and advertised to Plaintiff and Class and Subclass contains false, misleading, unfair or deceptive information regarding the payment processing fees.

d.   Whether Plaintiff and the Class and Subclass Members are entitled to the return of the excessive processing fees paid.

e.   What is the amount of excessive charges owed to Plaintiff and Class and Subclasses Members.

f.   Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act Fla. Stat., §501.201 et. seq. Fla. Stat. by knowingly collecting excessive fees for bill payment processing services from Plaintiff and the Florida Class Members.

j.   Whether Plaintiff and the Class Members still residing in areas subject to Defendant's deceptive processing fees are entitled to declaratory, injunctive

or other equitable relief to require Defendant to cease and desist charging deceptive processing fees in its credit card processing business.

k.  Whether Plaintiff and the Class and Subclass Members still residing in areas subject to Defendant's deceptive processing fees are entitled to declaratory, injunctive or other equitable relief to require Defendants in the future to fulfill contracts regarding online payment processing fees and charge only the advertised fees, and otherwise obey and comply with the applicable law in connection with its in its credit card processing business.

l.  Whether Defendant knowingly or unlawfully purported to charge a certain amount as a processing fee in exchange for making utility payments online via credit or debit card.

m.  Whether Defendant charged Class and Subclass Members more than that stated amount for its credit/debit card surcharges.

n.  Whether Defendant's actions constitute a breach of contract.

o.  Whether Defendant was unjustly enriched as a result of its actions.

p.  Whether Defendant is a "Money Transmitter" as defined by Fla. Stat. § 560.2013(23).

q.  Whether Defendant is an "unlicensed money transmitting business" as defined by 18 U.S.C. § 1960(b)(1).

r.  Whether Defendant is required to obtain a registration as a "money transmitting business" per 18 U.S.C. 1960.

58. Plaintiff's claim is typical of those of the Class and Subclasses. All claims are based on the same facts and legal theories.

59. Plaintiff will fairly and adequately protect the interests of the Class and Subclasses. He has retained counsel experienced in handling class actions involving unlawful anti-consumer practices.

60. Neither Plaintiff nor his counsel has any interests adverse to that of the Class and Subclasses or that might cause them not to vigorously pursue this action.

61. Certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

     a.  The questions of law and fact common to members of the Class and Subclasses predominate over any questions affecting an individual member.

     b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62. Additionally, certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate relief with respect to the Class as a whole.

63. Injunctive relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate and necessary to cause the misrepresentations, breaches, and surcharges to stop for the Subclass Members still subject to the credit card surcharge pricing scheme.

64. Consequently, Plaintiff requests certification of a hybrid class pursuant both to Rule 23(b)(3), for monetary damages, and to Rule 23(b)(2) for injunctive relief.

## COUNT I: BREACH OF CONTRACT
### (on behalf of the Class and both Subclasses)

65. Plaintiff incorporates all previous Paragraphs by reference.

66. Class and Subclass Members formed a contract with Defendant, to wit: Defendant agreed to provide the ability to pay utility bills online via a debit or credit card, and Class and Subclass Members agreed to pay a specified monetary amount as a processing fee in return for such ability.

67. Defendant engaged in a breach of said contract by charging a monetary amount more than specified in the contract.

68. Class and Subclass Members suffered damages, to wit: the difference between the amount specified in the contractual agreement, and that actually charged by Defendant.

69. Such damages and harm suffered was the direct result of Defendant's breach.

70. WHEREFORE, Plaintiff requests this Court enter judgment in his favor and in favor of the Class and Subclasses, against Defendant, for:

    a. An order certifying this case to proceed as a class action;

    b. An order directing Defendant to return monies received from the Class and Subclasses as a result of Defendant's breach;

    c. Injunctive, equitable, and any other further relief this Court deems appropriate.

## COUNT II: DISGORGEMENT AND RESTITUTION OF MONIES COLLECTED PURSUANT TO ILLEGAL CONTRACTS VIOLATING FLORIDA LAW
### (on behalf of the Florida Subclass)

71. Plaintiff incorporates all previous Paragraphs by reference.

72. At all relevant times, Defendant was unlawfully engaged as a money transmitting business without a license.

73. The contracts relevant to the Florida Subclass claims were pursuant to Defendant's actions as a money transmitting business.

74. As a result of actions stated above, Defendant reaped financial benefits in the form of fees for providing the ability to make utility payments online via a debit or credit card.

75. Defendant's actions violated Fla. Stat. § 560.204.

76. As a result of Defendant's unlawful conduct, the service provided and the fees charged constituted an illegal and unenforceable contract.

77. Defendant received income pursuant to the illegal contracts that resulted from Defendant's unlawful actions towards Plaintiff and the Florida Subclass.

78. Defendant caused such unlawful sales and bear legal responsibility for the illegal contracts that resulted.

79. As crystallized by *Fabricant v. Sears Roebuck*, "Florida law is well-settled that where the law requires licenses to conduct business, the contracts by the unlicensed to perform licensed services are null and void." 202 F.R.D. 310, 320 (S.D. Florida 2001).

16

80. Defendant is required to disgorge and make restitution to Plaintiff and Florida Subclass of all sums paid under the illegal contract, together with interest and such other or further relief as is appropriate.

81. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Florida Subclass, against Defendant, for:

    a.   An order certifying this case to proceed as a class action;

    b.   An order directing Defendant to disgorge their ill-gotten monies from Class Members;

    c.   Reasonable attorney's fees and costs; and

    d.   Such further relief as this Court deems appropriate.

### COUNT III: UNJUST ENRICHMENT
### (on behalf of the Class and both Subclasses)

82. Plaintiff incorporates all previous Paragraphs by reference.

83. Class and Subclass Members conferred a benefit on Defendant, to wit: payment of compensation to Defendant in exchange for money transmission and online payment services.

84. Defendant had knowledge of the benefit, in that Defendant itself collected said fee from the Class and Subclass Members.

85. Defendant accepted and retained the benefit conferred.

86. The circumstances are such that it would be inequitable for the Defendant to retain its compensation, as Defendant was not a licensed money transmitter as required by Fla. Stat. § 560.203.

87. Furthermore, the circumstances are such that it would be inequitable for the Defendant to retain its compensation, as the compensation conferred was greater than the amount that was advertised to Class Members.

88. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class and Subclasses, against Defendant, for:

  a. An order certifying this case to proceed as a class action;

  b. An order directing Defendant to disgorge their ill-gotten monies from the Class and the Subclasses;

  c. Reasonable attorney's fees and costs; and

  d. Injunctive, equitable and such further relief as this Court deems appropriate.

## COUNT IV: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT
### (on behalf of the Florida Subclass)

89. Plaintiffs incorporate all previous Paragraphs by reference.

90. Fla. Stat. § 501.211 grants a private right of action for violation of FDUTPA.

91. FDUTPA expresses a primary policy "[t]o protect the consuming public, from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and that the act "shall be construed liberally to promote [such] policies..." Fla. Stat. § 501.202.

92. As set forth above, Defendant's practice of imposing a processing fee on the use of credit or debit cards for online payments in an amount greater than the fee advertised to consumers constitutes an unconscionable act or practice, or an unfair or deceptive act or practice in the conduct of trade and commerce in the State of Florida.

93. As a direct and proximate result of Defendant's unlawful and deceptive activity, Plaintiff and Florida Subclass Members have been damaged.

94. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Florida Subclass, against Defendant, for:

    a.  An order certifying this case to proceed as a class action;

    b.  An injunction prohibiting further activity constituting a violation of FDUTPA.

    c.  An order awarding damages.

    d.  Reasonable attorney's fees and costs; and

    e.  Such further relief as this Court may deem appropriate.

## COUNT V: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT FOR STATUTORY VIOLATIONS
### (on behalf of the Florida Subclass)

95. Plaintiffs incorporate all previous Paragraphs by reference.

96. Defendant committed an unfair practice and deceptive act by conducting business as a money transmission service for compensation without obtaining a license as required by Fla. Stat. § 560.204.

97. Defendant also committed a deceptive and unfair practice by illegally and falsely advertising or allowing advertisement to be disseminated claiming the fees charged to be lower than the fees that were actually charged, thus violating Fla. Stat. § 817.41.

98. This practice caused actual damages to the Florida Subclass Members in that they paid processing fees to Defendant for online bill payment services in excess of the fees that were advertised, which is prohibited by law.

99. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Florida Subclass, against Defendant, for:

    a.   An order certifying this case to proceed as a class action;

    b.   An injunction prohibiting further violations of Fla. Stat. § 560.204;

    c.   An order awarding damages.

    d.   Reasonable attorney's fees and costs; and

    e.   Such further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

/s/ Edmund A. Normand
Edmund A. Normand
FBN: 0865590
Normand Law PLLC
62 W. Colonial Drive
Suite 209
Orlando, FL 32801
407-603-6031
ed@ednormand.com
firm@ednormand.com

***Counsel for Plaintiff
and Proposed Putative Class***